## Spahr *v.* Pennsylvania Railroad Company et al., Appellants.

Argued March 15, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*John McI. Smith,* for appellants.

*Earl Handler,* with him *Samuel Handler,* for appellee.

Opinion by Cunningham, J., June 25, 1940:

Pennsylvania Railroad Voluntary Relief Department, one of the defendants, is an unincorporated association which was organized for the purpose of establishing and managing a "Relief Fund" for the benefit of contributing employees of the Pennsylvania Railroad Company. It operates under a set of regulations forming a part of each contract with its members. The other defendant, Pennsylvania Railroad Company, has general charge of the Relief Department, guarantees the fulfillment of its obligations, supplies the facilities for conducting its operations and pays its operating expenses. For the purposes of this case the Relief Department will be considered the sole defendant; during the period with which we are concerned, E. B. Hunt was its superintendent and Dr. L. F. Howard was its Harrisburg medical examiner.

Harry M. Spahr, the plaintiff, while employed as a brakeman became a member of the association on October 23, 1911. On August 23, 1923, he became unable to perform his duties by reason of an attack of locomotor ataxia and was placed upon relief. The benefits prescribed by the regulations of the department were paid him until August 31, 1931. Upon that date the defendant ceased paying plaintiff any benefits upon the ground that he was able to earn, and in fact had for a period of four years been earning, a livelihood in another employment. This refusal to continue the payment of benefits gave rise to the present litigation.

As the result of a bill in equity filed by the plaintiff on July 12, 1937, the court below entered a decree directing the defendant to pay him the aggregate of the benefits which it held had accrued from the date defendant discontinued them until the date of the decree, with interest, but subject to a deduction hereinafter discussed. This appeal is by the defendant from that decree.

The applicable regulations involved under the pleadings and evidence are Nos. 42, 45 and 65.

Regulation 42 provides, inter alia, for the payment of accident, sickness and death benefits. While "disabled by accident in the company's service," the association promised to pay fifty cents a day to members of the first class and proportionately greater amounts to members of other classes for the first fifty-two weeks, and then at half rates during the continuance of disability. The same provision is made for members "while disabled by sickness or by injury other than accident in the company's service," except that the rates are lower. No death benefits are involved in this case.

This regulation contains no specific reference to the payment of benefits for *permanent* "disablement," either as the result of an "accident in the company's service" or of "sickness or by injury other than accident in the company's service."

As to *sickness*, there is this provision: "If a member, after receiving for fifty-two weeks the payments herein provided for disability from sickness, whether continuously or in several periods, shall be declared by the medical examiner able to return to duty, he shall resume full contribution, ......"

"Disablement" of "a permanent character," whether resulting from an "accident in the company's service" or "sickness," is provided for in Regulation 45. By the first paragraph of this regulation it is prescribed that the benefits on account of disablement by accident shall be paid only when the accident occurred during and in connection with the performance of duty in the service of the company or in voluntarily protecting the company's property or interests, or in going to and from work on the company's property.

The second and third paragraphs read:

"If the injury is of a permanent character benefits will cease when the member shall be declared by the medical examiner as able to earn a livelihood in an employment suited to his capacity.

"Disablement from accident occurring otherwise than

as aforesaid, including such as may arise at any time from acts or things having no proper relation to the performance of duty, or from individual physical condition or tendency, shall be classed as sickness, and if of a permanent character benefits will cease when the member shall be declared by the medical examiner as able to earn a livelihood in an employment suited to his capacity."

We think the clear meaning of the regulation is that all disablement, except that attributable to an accident suffered while in the actual performance of a company duty, shall be considered as due to "sickness," and, if permanent in character, shall entitle a member to benefits until the medical examiner shall declare him "able to earn a livelihood in an employment suited to his capacity."

The medical testimony supports the findings of the chancellor that plaintiff has been disabled from the performance of his duties upon the railroad by an "individual physical condition ...... of a permanent character" since August 23, 1923. In our opinion this brings the case under Regulation 45.

Benefits were paid plaintiff regularly for eight years after his disability began. In September, 1931, the medical examiner, having been advised that plaintiff was employed as the steward at the West End Social Club, called him to his office on September 8, 1931, at which time plaintiff admitted he had been so employed since September 1, 1927, and had received from the club $30 a week. During the period from September, 1927, to September, 1931, plaintiff also collected benefits in the total amount of $730.50. With this admission by plaintiff that he had in fact been receiving in another employment substantially the same wages he had earned while employed as a brakeman, the medical examiner and the superintendent concluded the above quoted provision of Regulation 45 relative to the cessation of benefits should be applied.

The procedure for the disposition of all controversies arising between the department and any member is prescribed by Regulation 65. The first paragraph thereof reads: "All questions or controversies of whatsoever character arising in any manner, or between any parties or persons in connection with the Relief Department, or the operation thereof, whether as to the construction of language or meaning of the Regulations of the Relief Department, or as to any writing, decision, instruction or acts in connection therewith, shall be submitted to the determination of the Superintendent of the Relief Department, whose *decision* shall be final and conclusive thereof, subject to the right of appeal to the Advisory Committee *within thirty days* after notice to the parties interested, of the decision." (Italics supplied.)

By the second paragraph full provision is made for hearings before the advisory committee when an appeal has been taken to it and for the reception of evidence and argument thereon.

The superintendent, upon being advised of the situation, wrote the medical examiner the following letter under date of September 16, 1931:

"Dr. L. S. Howard,

Medical Examiner.

Dear Sir:

Referring to yours of Sept. 10, 1931, regarding the case of H. M. Spahr, Middle Division, Certificate No. 199842, who has been on your disablement list since August 23, 1923.

As this man is working and earning a livelihood outside the company, no further benefits will be paid after August 31, 1931, and the case should be closed as of that date, without issuing an RD 26.

Very truly yours,

(Signed) E. B. Hunt,

Superintendent."

The expression "RD 26" evidently refers to a return to

duty card, the issuing of which at the end of a temporary disablement is provided for in Regulation 42.

Upon the receipt of this letter from the superintendent, the medical examiner sent plaintiff the following notice:

"Harrisburg, September 22, 1931.

Mr. H. M. Spahr,
  406 Harris St.,
    Harrisburg, Pa.

Dear Sir:

I have been advised by Mr. Hunt, Supt. Relief Department, that as you are working and earning a livelihood outside of the company, no further benefits will be paid after August 31, 1931.

Yours respectfully,
(Signed)  L. S. Howard,
Medical Examiner."

The prompt receipt of this notice by plaintiff is admitted and it is also conceded that he made no effort to appeal from the action of the superintendent and medical examiner to the advisory committee within thirty days after receipt of the above quoted notice that no further benefits would be paid.

Years later, in April, 1937, plaintiff attempted to appeal to the advisory committee but that body, referring to the action of the superintendent and medical examiner in September, 1931, declined to entertain his belated application. There was evidence that plaintiff's employment by the club continued for at least a year subsequent to the cessation of benefits from the department.

The pivotal question involved upon this appeal is whether the letter of the superintendent, under date of September 16, 1931, amounted to a "decision" within the meaning of Regulation 65 that plaintiff, as of August 31, 1931, was able to earn a livelihood in an employment suited to his capacity. If it was, plaintiff's admitted failure to appeal to the advisory committee

within thirty days bars him from applying to any court for relief, because he did not exhaust his remedies within the association: *West v. Penna. R. R. Co.*, 328 Pa. 156, 195 A. 912; *Varzaly v. Yuhasz*, 128 Pa. Superior Ct. 314, 193 A. 63, and cases there cited. As to the extent of the review by a court when the member has exhausted his remedies within the organization, see also *Cimprich v. Penna. R. R. Co.*, 119 Pa. Superior Ct. 5, 15, 180 A. 51.

The court below held the action of the superintendent did not amount to a "decision." We are unable to agree with this conclusion.

We think the letter of the superintendent was a "decision" within the meaning of the regulation. No particular form of decision is prescribed. As a matter of substance, the superintendent reached a conclusion quite definitely and stated it in writing. The common acceptation of the meaning of the word is thus given in Webster's International Dictionary: "Act of deciding; act of settling or terminating, as a controversy, by giving judgment on the matter at issue; determination or result arrived at after due consideration, as of a question or doubt; settlement; conclusion."

Plaintiff's failure to appeal also bars him from now raising many of the questions considered below and discussed in his brief. If he had availed himself of his right to appeal to the advisory committee he would have been in a position to contest before that body the question whether the money he received from the club was actually earned, as asserted by the defendant, or given as a gratuity, as averred by plaintiff. The findings of the chancellor upon this issue seem to be rather conflicting. In the fifteenth, he found plaintiff "was given the so-called wages as an act of charity," but in the sixteenth that he "was gainfully employed" at the club. This, however, is one of the subsidiary questions which plaintiff cannot now raise by reason of his failure to appeal from the decision of the superintendent.

The principal grounds upon which the chancellor held plaintiff was excused from taking an appeal to the advisory committee seem to have been: (1) That plaintiff was neither given a physical examination, notified of the proposed action, nor afforded a hearing before the superintendent; and (2) the absence of a formal finding by the medical examiner that plaintiff was "able to earn a livelihood in an employment suited to his capacity."

As to the first it is sufficient to say that none of the matters therein enumerated is required, provided for, or contemplated by, Regulation 45, or by the portion of Regulation 65 prescribing the procedure prior to the taking of the appeal. The only notice therein provided for is the admitted notice of the "decision" of the superintendent. The second paragraph of Regulation 65 prescribes the procedure before the advisory committee when an appeal has been taken thereto. As above stated, it provides for a full hearing and the disposition of the controversy after the submission of evidence and argument.

Nor does Regulation 45 prescribe any method by which the medical examiner shall determine and declare that a member, although permanently disabled from returning to duty on the railroad, is able to earn a livelihood in another employment. It is clear from the testimony in this case that the declaration of the medical examiner was based primarily upon the admission of plaintiff made to the examiner in his office on September 8, 1931, (Record 75a) that he was then working for the club and receiving $30 a week. We think this was a sufficient basis for the declaration of the examiner. Upon the whole record we are unable to see that defendant's officers acted arbitrarily, unreasonably or illegally in their interpretation and enforcement of the applicable regulations of the association.

An additional defense interposed during the trial was that plaintiff's original membership in the association

had been procured in 1911 by fraudulent representations with respect to his then existing "physical condition." In his application plaintiff certified he had "no physical infirmity." When it developed from the medical testimony at the trial that the locomotor ataxia, which had disabled plaintiff from the performance of the duties of his employment as a brakeman, was of syphilitic origin and that the "initial lesions" had occurred prior to 1911, defendant was permitted to amend its answer to include an averment of false answers by plaintiff in his application.

There was no evidence that plaintiff knew, or had been advised, that he had syphilis at the time of his application for membership. Under that state of the record, the court below correctly held plaintiff had not been shown to have been guilty of any fraud in procuring membership in the association.

In this connection it may be noted that defendant in its brief invokes an additional regulation. By Regulation 52 it is provided: "Benefits shall not be payable for disability from sickness ...... from venereal disease." It is suggested that this provision furnishes a full defense in this case. This defense was neither pleaded in the answer nor raised in the court below; it cannot be raised for the first time in this court.

In disposing of the case the chancellor directed that from the aggregate amount of benefits held to have accrued between August 31, 1931, and the date of the decree (approximating $1350, without interest) there should be deducted the above mentioned "amount paid to plaintiff from September 1, 1927, to August 31, 1931, being the sum of $730.50, with interest from August 31, 1931."

No reason was stated by the learned chancellor for this deduction, and we are unable to suggest any. If, as held by the court below, plaintiff should have been paid benefits subsequent to August 31, 1931, we see no reason for requiring him to return those received prior

to that date. There was no change in the character of his outside employment. The failure of defendant to discover until September 8, 1931, that plaintiff had been gainfully employed since 1927 was its own fault.

A majority of the members of this court are of opinion that neither party is liable to the other in any amount and that the assignments of error, based upon the decree nisi, entered by the court below as the final decree, must be sustained.

Decree reversed at the costs of appellee.